UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

DEBORAH K. CRONIN,                            )
               Plaintiff,                     )
                                 )
       vs.                                       )           1:05-cv-1804-LJM-WTL
                                 )
SOUTH INDIANA ANNUAL CONFERENCE, )
UNITED METHODIST CHURCH,           )
              Defendant.                   )

## ORDER ON DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Plaintiff, Deborah K. Cronin ("Cronin"), filed this action for violation of the ADA, 42 U.S.C. § 12112(b)(5)(A), and for violation of 42 U.S.C. § 12203(a).  This matter comes before the Court on defendant's, South Indiana Annual Conference, United Methodist Church ("South Indiana Annual Conference"), Motion to Dismiss or, in the alternative, Motion for Summary Judgment.  For the reasons stated here in, the Court **GRANTS** defendant's Motion to Dismiss.

## I. BACKGROUND

The Methodist Church (the "Church") was formed in 1939 through the union of the Methodist Episcopal Church, the Methodist Episcopal Church, South, and the Methodist Protestant Church.  Sharp Aff. ¶ 4.  The term "annual conference" is described by the Church's *Book of Discipline* as the "basic unit" of the Church and is also considered a regional body of the Church.  *Id.* at ¶ 10.  The purpose of an annual conference is stated in the *Book of Discipline*: "The purpose of Annual Conference is to make disciplines [sic] of Jesus Christ by equipping its local churches for

ministry and by providing a connection for ministry beyond the local church; all to the glory of God." *Id.* at ¶ 11.

A person who is an ordained minister in the Church is one "within the ministry of the baptized who is called of God and set aside by the Church for the specialized ministry of Word, Sacrament, and Order." *Id.* at ¶ 18. To qualify for ordination, an individual must meet the requirements for membership set forth by the Church and must have completed the necessary educational training. *Id.* Ordained persons exercise their ministry in covenant with all Christians, especially with those who they lead and serve in ministries. *Id.* at ¶ 19. The effectiveness of the Church's mission depends upon the ordained ministry of the Church. Through ordination and through other offices of pastoral leadership, the Church provides for the continuation of Christ's ministry, which has been committed to the Church as a whole. *Id.* at ¶ 20.

Cronin is an ordained elder in full connection with the United Methodist Church. Cronin Dep. at 89. Cronin has over a decade of experience as a pastor to rural, urban, and suburban congregations. Cronin Dep. Ex. 1. She is also nationally known for her work with churches with small membership ministry. Cronin Dep. Ex. 10. As an ordained minister, Cronin was required to convey the message of the Church and was a public representative of the Church. Cronin Dep. at 79.

On August 15, 2000, Cronin was appointed to the position of associate council director of the South Indiana Annual Conference. Cronin Dep. Ex. 11. Cronin testified that her "ministry as an associate council director was largely preaching, program development and administration." Cronin Dep. at 81. Cronin also testified that these duties included spreading church doctrine or the faith of the Church through various programs. *Id.* at 81. As associate council director, Cronin was primarily responsible for the South Indiana Annual Conference's connectional ministries relating

to local church resourcing.  Sharp Aff. ¶ 37.  Cronin also worked in the areas of church growth and evangelism, congregational redevelopment, small membership church, new church development, screening and strategy, Hispanic ministries, religion and race, status and role of women, spiritual formation, anti-gambling, and ordained ministry.  Cronin Dep. Ex. 20.  In this position, Cronin served as a consultant for small churches.  Cronin Dep. at 71.  As part of this consulting, she and various churches spent time looking at the structure of the local church as outlined in the *Book of Discipline*.  *Id.*  Upon appointment to the position of associate council director, the South Indiana Annual Conference supplied Cronin with a parsonage.  Cronin Dep.  at 16.  Cronin lived at the parsonage with her mother for about two-and-a-half years and later was provided a housing stipend because the parsonage was ill-equipped for her mother.  *Id.* at 110; Pl.'s Br. in Opp'n at 1.

Cronin had disagreements with several people she worked with during her time as associate council director.  She had some disagreements with Lourdes Gonzales, her administrative assistant.  Cronin Dep. at 145.  Cronin also has admitted to disagreements with Rev. Robert Sharp ("Rev. Sharp"), the Council Director for the South Indiana Annual Conference, and two other administrative assistants, Mildred Boes ("Boes") and Sandra Blackwell.  Cronin Dep. at 124, 134, 145-47, 163.  An example of a "disagreement" that arose between Cronin and Boes occurred in June 2004, when Cronin interrupted Boes' cardiologist appointment.  Cronin testified that Boes had not delivered a report earlier in the day that Cronin needed.  *Id.* at 135-36.  Cronin tried to reach Boes at home and later called her son's home.  *Id.* at 136.  The person that answered said Boes was at a doctor's appointment, which Cronin thought was Boes' allergist.  *Id.* at 137.  Cronin called the doctor's office and then drove to the doctor's office and eventually found Boes, who was angry at Cronin for her actions.  *Id.* at 137-38.

3

Another example of a "disagreement" was documented in an exchange of letters between Rev. Sharon White ("Rev. White"), a member of the Board of Ordained Ministry and the Continuing Formation Panel, and Rev. Sharp.  Following a pastor's conference in October 2004, Rev. White wrote a letter that included several observations and concerns related to the conference and Cronin's conduct as the conference staff representative.  Cronin Dep. Ex. 39.  Sharp responded to Rev. White, thanking her for her concern and assuring her that he had spoken with Cronin and that she was willing to participate in diversity training.  *Id.*

In October 2001, after Rev. Sharp's appointment to the South Indiana Annual Conference, Cronin sent at least one letter to Bishop Woodie W. White ("Bishop White") to inform him of incidents that involved Sharp's allegedly inappropriate physical and verbal behavior.  Cronin Dep. Ex. 4.  Cronin does not claim that Sharp sexually harassed her.  Cronin Dep. at 228.  On January 17, 2002, Bishop White responded to Cronin's letter and informed her that he had met with Rev. Sharp and shared the concerns and allegations.  Cronin Dep. Ex. 4.  Bishop White also wrote that he had protected all confidences and the origin of the allegations.  *Id.*  Rev. Sharp claims that he did not know that Cronin spoke or complained to Bishop White regarding alleged sexual harassment or inappropriate touching by Rev. Sharp.  Sharp Aff. ¶ 56.  Cronin does not contend that there was any other agent of the South Indiana Annual Conference that retaliated against her besides Rev. Sharp.  Cronin Dep. at 201.  She testified that she felt Rev. Sharp was "non-supportive in hopes that I would at some point no longer be on the Conference staff and that he would look for a way for me to exit the Conference staff."  *Id.*

In the spring or summer of 2003, Cronin claims she made verbal requests for a LCD projector.  Cronin Dep. at 181.  On or about February 26, 2004, Rev. Sharp responded to one such request by memo.  Cronin Dep. Ex. 26.  Sharp informed Cronin that there were three full-time staff

4

persons who used the three LCD projectors already available, but that he had reserved one LCD projector for Cronin's use for the next month. *Id.* Rev. Sharp indicated that the Church would need to evaluate whether its resources could afford to purchase another LCD. *Id.* In September 2004, Cronin received her own projector. Cronin Dep. at 182.

On June 14, 2004, Cronin informed Sharp that she had arthoscopic knee surgery the following Wednesday afternoon and that she would not return to work until the Monday after her surgery. Cronin Dep. Ex. 27. On or about August 12, 2004, Cronin gave Blackwell, Sharp's administrative assistant, a notice indicating that Cronin needed physical therapy to recover from her knee surgery. Cronin at 195. This physical therapy was scheduled during Cronin's normal working hours and would require her to arrive at work at 10:00 A.M. or 11:00 A.M. several mornings a week. *Id.* The South Indiana Annual Conference did not raise any objections to Cronin's physical therapy appointments. *Id.* at 196.

On October 25, 2004, Cronin prepared a memorandum for Sharp concerning her eyesight. Cronin Dep. at 196, Ex. 42. In this memorandum, Cronin wrote that her eyesight had severely deteriorated in the past month, that she had double vision and "poor reading eyesight," making it very difficult for her to read anything smaller than eighteen-point font on her computer, and that magnifying glasses did not help her vision. Cronin Dep. Ex. 42. Cronin also requested help with the Natural Church Development surveys. *Id.* At the time Cronin's appointment as associate council director ended, she had been having discussions with the information technology department about what might aid her in the office in light of her vision problems. Cronin Dep. at 178.

On November 9, 2004, Cronin met with the Personnel Committee to discuss her annual evaluation. Sharp Aff. ¶ 52. The Personnel Committee is responsible for hiring staff, making recommendations to the Bishop regarding clergy, and dealing with personnel issues regarding staff.

5

*Id.* at ¶ 51.  On this same date, the South Indiana Annual Conference, through its Personnel Committee, voted unanimously to ask the Bishop to provide Cronin with a different appointment within the Church.  *Id.* at ¶ 53.  At the meeting, Cronin was not told specifically why the Personnel Committee voted to ask Bishop White to give her a different appointment, but someone did tell her that she did not "get along with some people."  Cronin Dep. at 167.  Cronin was then asked to leave and she understood her appointment as associate council director was ending.  *Id.* at 173.

On June 13, 2005, Cronin filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 240-2005-06382.  Cronin Dep. Ex. 44.  The charge was for discrimination based on disability, specifically that Cronin had been subjected to unlawful discrimination in the workplace, a denial of reasonable accommodations, and ultimately wrongful termination.  *Id.*  The only disability alleged was a vision problem.  *Id.*  This charge was dismissed on August 31, 2005, due to lack of jurisdiction.  Neighbours Aff. Ex. A.  The dismissal was accompanied with a notification of Cronin's right to sue.  *Id.*

On December 6, 2005, Cronin filed a second charge of discrimination with the EEOC, EEOC Charge No. 240-2006-01481.  Cronin Aff. Ex. 45.  This charge was for discrimination based on sex, retaliation, and disability, specifically that Cronin was subjected to unwanted touching by Sharp and that her termination was in retaliation for her attempts to seek accommodation for her disabilities and for her complaint of sexual harassment.  *Id.*  This charge was dismissed on December 20, 2005, for lack of jurisdiction and was also accompanied with a notice of Cronin's right to sue.  Neighbours Aff. Ex. B.

6

## II. SUBJECT MATTER JURISDICTION STANDARD

If a district court lacks subject matter jurisdiction over an action dismissal is mandated by Federal Rule of Civil Procedure 12(b)(1).  "Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."  *State of Ill. v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998).  When a motion to dismiss for lack of subject matter jurisdiction is before the Court, it "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff."  *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).  However, "[w]here evidence pertinent to subject matter jurisdiction has been submitted, . . . 'the district court may properly look  beyond the jurisdictional allegations of the complaint . . . to determine whether in fact subject matter jurisdiction exists.'"  *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999) (citing *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996)).  Additionally, "[t]he plaintiff has the obligation to establish jurisdiction by competent proof."  *Id.*

## III. DISCUSSION

The South Indiana Annual Conference claims that Cronin's ADA and Title VII retaliation claims fail for lack of subject matter jurisdiction due to the application of the "ministerial exception" to Federal employment laws.  Cronin contends that the South Indiana Annual Conference must show that she was a practicing "minister" to succeed on its motion to dismiss and that the South Indiana Annual Conference has failed to do so.

The Seventh Circuit adopted what has been labeled the "ministerial exception" to Federal employment law in *Young v. Northern Illinois Conference of United Methodist Church*, 21 F.3d 184 (7th Cir. 1994).  In *Young*, the Seventh Circuit carefully traced the path of the ministerial exception,

7

albeit not naming the exception as such, and refused to find jurisdiction over a claim of gender discrimination and retaliation between a church and its minister. *Id.* The Seventh Circuit explained the impact of *Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich*, 426 U.S. 696 (1976), on this issue, stating that "*Milivojevich*, read in its entirety, holds that civil court review of ecclesiastical decisions of church tribunals, particularly those pertaining to the hiring or firing of clergy are *in themselves* an 'extensive inquiry' into religious law and practice, and hence forbidden by the First Amendment." *Young*, 21 F.3d at 187. The Seventh Circuit then concluded that granting jurisdiction "would require [it] to cast a blind eye to the overwhelming weight of precedent going back a century in order to limit the scope of protection granted to religious bodies by the Free Exercise Clause." *Id.* at 188.

More recently, the Seventh Circuit formulated an inquiry to aid in the determination of whether the ministerial exception applies: "In determining whether an employee is considered a minister for the purposes of applying this exception, we do not look to ordination but instead to the function of the position. The question . . . to answer therefore is whether [the plaintiff's] position . . . can functionally be classified as ministerial." *Alicea-Hernandez*, 320 F.3d at 703. In addition to this inquiry, the Seventh Circuit has also explained that it does not matter whether the alleged discrimination in question was exclusively secular: "The 'ministerial exception' applies without regard to the type of claims being brought." *Id.* More specifically,

> the ministerial exception to Title VII is robust where it applies . . . . The exception precludes any inquiry whatsoever into the reasons behind a church's ministerial employment decision. The church need not, for example, proffer any religious justification for its decision, for the Free Exercise Clause "protects the act of a decision rather than a motivation behind it."

*Id.* (quoting *E.E.O.C. v. Roman Catholic Diocese of Raleigh*, 213 F.3d 795, 801 (4th Cir. 2000)).

The ministerial exception has not been exclusively applied to Title VII disputes.  The Fifth Circuit applied the ministerial exception to the ADA, explaining that "[w]hile religious institutions are generally bound by the ADA and other employment discrimination law, . . . the facts of this case trigger the Free Exercise Clause's bar against such claims."  *Starkman v. Evans*, 198 F.3d 173, 177 (5th Cir. 1999).  The Ninth Circuit has also applied the ministerial exception to claims based on a failure to accommodate an employee's disabilities, stating that "a minister's working conditions and the church's decision regarding whether or not to accommodate a minister's disability, *are* a part of the minister's employment relationship with the church."  *Werft v. Desert Sw. Annual Conf. of the United Methodist Church*, 377 F.3d 1099, 1103 (9th Cir. 2004) (emphasis in original).

In light of the above discussion, the proper inquiry in the  matter before the Court is whether Cronin's position as associate council director can be classified as ministerial when looking at the function of the position.  A helpful guide in making this decision was provided in *Guinan v. Roman Catholic Archdiocese of Indianapolis*, 42 F. Supp. 2d 849, 852 (S.D. Ind. 1998), which stated that "[a]s a general rule, if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered clergy for purposes of the exception."  *Id.* (internal citations and quotations omitted).

The South Indiana Annual Conference describes at length why the various duties and functions of Cronin's position should be classified as ministerial.  In response, Cronin argues that the South Indiana Annual Conference has not shown that Cronin's position was ministerial in nature.  To support this assertion, Cronin offers one piece of evidence, Cronin's 2003 performance review.  Cronin Dep. Ex. 3.  Cronin claims that the evaluation does not contain one reference to preaching,

ministerial duties, or spiritual matters of any kind and that this is proof that Cronin's position should not be classified as ministerial.

After reviewing the largely undisputed evidence of Cronin's position and her own testimony concerning her position, the Court must conclude that Cronin's position as associate council director was ministerial in nature.  The evidence presented by Cronin to support subject matter jurisdiction is far outweighed by the other evidence on record.  Cronin was an ordained elder in full connection. Cronin Dep. at. 89.  As an ordained minister, she was required to convey the message of the Church. *Id.* at 79.  Sharp explained that following ordination, one has the authority to exercise the responsibilities and duties of an ordained minister.  Sharp Aff. ¶ 18.  Cronin described her duties as associate council director as "largely preaching, program development and administration, which are included among those duties of the pastor."  Cronin Dep.  at 81.  These duties included spreading the doctrine of the Church or the faith of the Church through those programs.  *Id.*  Cronin occasionally preached.  *Id.* at 82.  She evaluated churches' Sunday morning programs, "typically the worship program, what was happening, how it was put together, what was happening inside the sanctuary, [and] what was happening outside the sanctuary."  *Id.*  Cronin testified that any sections of the Church's *Book of Discipline* that would apply to fully ordained pastors would relate to her. *Id.* at 88.  Sharp further elaborated that "[a]s [a]ssociate [c]ouncil [d]irector, Cronin was primarily responsible for the South Indiana Annual Conference's connectional ministries relating to local church resourcing."  Sharp Aff. ¶ 37.

Other courts have found various positions to be functionally ministerial with far less evidence as to the ministerial nature of the position in question.  *See, e.g.*, *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006) (finding a music director's position ministerial and applying the ministerial exception); *Alicea-Hernandez*, 320 F.3d at 698 (finding a press secretary's position

ministerial and affirming the district court's dismissal for lack of subject matter jurisdiction).  In fact, in *Young*, the Seventh Circuit applied the ministerial exception to the claims of a probationary minister of the United Methodist Church when she applied for a promotion to the position of "Clergy Member in Full Connection" in the Northern Illinois Conference.  *Young*, 21 F.3d at 184. In the instant case, Cronin was already a "Clergy Member in Full Connection;" therefore, it is reasonable to conclude that her higher appointment had more ministerial functions than the probationary minister in *Young*.

The Court finds that Cronin's position of associate council director of the South Indiana Annual Conference falls under the ministerial exception and, as such, the Court cannot exercise subject matter jurisdiction in this case.  The Court **GRANTS** South Indiana Annual Conference's Motion to Dismiss and Cronin's claims are **DISMISSED WITHOUT PREJUDICE**.

## IV. <u>CONCLUSION</u>

For the reasons stated herein, defendant's, South Indiana Annual Conference, Motion to Dismiss is **GRANTED**.  Plaintiff's, Deborah K. Cronin, claims are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED this 3rd day of August, 2007.


LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana


Distribution attached.

Electronically distributed to:

Michael K. Bonnell
mkbonnell@hotmail.com

Heather L. MacDougall
BAKER & DANIELS
heather.macdougall@bakerd.com

John T. Neighbours
BAKER & DANIELS
jtneighb@bakerd.com

Mark D. Trainer
BAKER & DANIELS
mark.trainer@bakerd.com